Thank You Your Honor. I would like to reserve a bit of my time maybe say seven minutes for the rebuttal on this case. In this case we're only talking about the summary judgment issues there was it was timely filed and in this case plaintiff would apologize appellant would maintain that there were shown in the record that there's a very different understanding of what happened to Mr. Reif in this case. So what's the protected activity in Mr. Reif's case? Sure the initial protected activity in Mr. Reif's case was he was complaining about being required to transport what he was of the understanding were hazardous chemicals based on what his previous supervisor had told him. It was his understanding that under the law you were required to have specific licenses and there were specific requirements for transporting these hazardous chemicals yet he was required to do it to you know meet certain sales goals essentially. So these were detergents correct? I believe so As it ends up you do not need a particular certification or license to transport these detergents correct? So we don't have a we don't have a statute in play right? I would agree with that but that was not my clients understanding at the time and I would. And his understanding was based on what somebody had told him at a previous place of employment correct? I believe it's the same place of employment your honor but a previous supervisor. Either way his previous supervisor had made it clear to him and he trusted that. I'm having trouble finding. I have the same question that Judge Christensen was raising. Is it contrary to law to transport these products without a that supports that it is contrary to law? However I do believe that Mr. Reif had a reasonable belief that it was a violation of law and that he was complaining about that reasonable belief and that that is what resulted in him being retaliated. What is your best case that says a protected activity can just be based on a reasonable belief? Sure. When there isn't a law underlying it. The best case would be the same case that I cited in response to the the previous argument which would be the Weingard versus Highland or I apologize Harland Financial Services Solutions Inc. I'm sorry I tripped over that so I'm going to say it one more time. Weingard versus Harland Financial Solutions Inc. What does that case which is why does it support you? I believe it the protections under the whistleblower statute under 1102.5 C specifically they can be extended to include the employee's reasonable belief of an unlawful activity and I believe... Any time an employee thinks something might be wrongful in their belief I guess reasonable we look at it in the libel plaintiff then that's going to survive summary judgment? I don't know if that's the... I don't know that it's that that cut-and-dry your honor but with respect to the reasonableness I do believe that there are facts in dispute here as to whether Mr. Reif reasonably believed this to be a violation of law. I could see a case where for example let's say in this case Mr. Reif had raised the issues and Shamrock had said no no way no how you don't need to have this special license look here's the material data safety sheet or something saying you don't need this then I would agree it would be really difficult to come to the almost impossible to come to the conclusion that Mr. Reif was reasonable in his belief that this was unlawful activity however in this case we have yes we don't have a statute on point saying that this is unlawful however we have Mr. Reif putting forth that his prior supervisor informed him that these were required and it was a legal requirement for the safety of the public and the driver so so let's just sort of step back here so your argument is that because he had heard from a previous employee or somebody within the organization that he shouldn't be transporting detergents without a certification or a license that he complained to Shamrock regarding that and then they put him on a performance improvement plan and that was pretextual to wanting to terminate him because he had commented about transporting detergents based on something that had been said to him by somebody else I mean that's the case isn't it that is basically it your honor I mean that's your retaliation claim you've got other claims yes yes there are other claims there's a small addition to the retaliation claim that I'd like to briefly add but that he was also complaining about what he believed to be unlawful deductions from his paycheck right but that yeah okay yeah I understand that okay what was the the complaint that was made to the Shamrock about was it I'm trying to remember I get confused between this case and that he had or was it relating to a child or a family member this was related to his child okay and was was that complaint or that request made or was that knowledge imparted to Shamrock before or after Shamrock had determined to terminate him your honor it is our position that it was made before there are facts in dispute there's a declaration let me back up one second the only evidence that the defendants have presented in support of their assertion now that the decision was made to terminate him before he made that request is a self-serving declaration of the HR representative there is no documentary evidence there are no emails between anyone at Shamrock evidencing that this decision was made to terminate him until he calls them on the morning of February 22nd or I apologize 26th tells them of his daughter's debilitating diagnosis and that he will need some time to care for her and later that day the paperwork is drawn up to terminate him therefore even I mean plaintiffs maintain that the decision was that day appellant I apologize however there certainly were facts and dispute as to that issue that could go to a trier of fact to determine when that day actually was whether than rather than them being summarily adjudicated I had a question is there any documentary evidence to support the fact no I'm sorry this was on the pay stubs on summary judgment your honor I believe that they did produce the ones that were available let me show me in the record where that yes let me find  this one has fairly significant excerpts of the record I believe his excuse me his pay stubs appear on exhibit C to the excerpts of the record beginning at 0 9 9 C E R yes number 9 9 yes and this is the pay stub that's included is what I believe to be his final pay stub indicating that he was not paid for the vacation hours that he's asserting where's I thought the only evidence you had was his testimony of looking at pay stubs that he didn't think he producing but I'll look at this thank you you're at yours yes thank you 13 seconds so may it please the court Andrew summer counsel for shamrock foods company this is it's a fairly straightforward case of wrongful termination the appellant mr. Reeve had the opportunity to conduct significant discovery in this case both by deposing the key decision-maker Chris Jenkins who was involved in the termination decision as well as the HR representative Monica Hergert despite the discovery that's been conducted in this case the plaintiff has relied largely on his own self-serving declaration to support his claims he has not offered any that would undermine the termination decision both as to the timing and the motivation for the decision the termination decision was made on February 25th and we have provided testimony sworn statement from Chris Jenkins that supports the timing of that decision is there any other documentary evidence to support that we don't reflects that decision being made on the correct there is in the declaration Chris Jenkins he does identifying as part of the timeline that he received a sales report by email on February 25th and in the morning and that's what prompted him based on his review of the full sales performance from the first to the 24th of that month that that mr. reef was not going to make his sales goals and based on that information they put in motion they knew that they were going to meet with him on March 1st one way or the other based on the performance improvement plan they made the decision or Chris Jenkins made the decision in consultation with management to then proceed with the termination and mr. Jenkins continued to monitor mr. reef's performance through the first to ensure that he was correct and that he was not going to meet those goals and then a point I wanted to make is that mr. reef insists that the termination decision was suspect and that's based on his own self-serving subjective conclusion and despite having the opportunity to cross-examine defense witnesses in his case he hasn't offered any testimony that would suggest that in fact the decision was not made on the 25th nor has he offered any other document to documentary evidence I just asked about paid stubs I know that's a different allegation there but is that if I look at exhibit CER number 99 it's not going to be the pay stubs right that is that is the final pay stub for mr. reef and that shows the payout on the it appears that mr. reef is claiming is that he had one more floating holiday but he has not provided any evidence indicating how how it is that he had this additional floating holiday the we provided the declaration Monica Herger miss miss Herger was deposed in this case and she has testified that she has reviewed the the payroll system confirmed that that floating holiday was not deducted and specifically that's a floating holiday where mr. reef claims that he worked on January 1st and that the employees across the board were being deducted floating holidays for that day because they presumably weren't working he sent an email to the fax Turner in management indicating that he had worked on the first in response to tax turners email and mr. Turner responded back indicating you will not be don't deduct essentially for this floating holiday copying payroll and that was an email to to mr. reef there is no evidence in this case that in fact that floating holiday contrary to that email by tax Turner was deducted now in terms of the decision in this case you know there are wrongful termination cases where there's subjective reasons for termination it can be how an employee interacts with customers with co-workers things of that nature here this termination was based on objective criteria it was based on sales goals they had measurable specific sales goals that were identified for mr. reef that he admits he did not achieve and he does not claim that other sales reps were not subject to these types of goals when was his performance improvement plan put in place it was put in place on on January 30th 2013 and when was he terminated he was terminated on March 1st so they gave him two months well they gave him one month correct to perform and then he was gone right but this was a culmination of a period of counseling beginning at least in October 2012 so they had met and this is all in the record the plaintiff had met with his managers discuss his performance and that he wasn't making the mark in achieving these goals they then not until a number of months later on did they actually put him on the performance improvement plan and then at that point they even reduced to sales goals and have to a very low threshold to essentially give him every opportunity to succeed and then he didn't make that mark and on that basis they terminated him and so this wasn't a rash decision you know shamrock only terminated after giving him this opportunity at counseling to improve his performance and then providing that 30 days for the performance improvement plan in terms of the fml fml a and cipher claims there needs to be evidence that the termination or that that the qualifying leave was a negative factor in the termination simply here mr. reef hasn't proven provided any such evidence I want to go back to judge murky is a question the d2 she asked if there was any objective evidence supporting the date when shamrock determined that they were going to terminate mr. reef and you said well we've got a declaration of the person that made the decision to terminate mr. Jenkins mr. Jenkins so are you saying that the evidence of this and appear to me from my review of the record the evidence of this what we have here is that mr. Jenkins decided in his mind that he was going to terminate him on this particular day I think it was in January and then is it the next day that mr. reef advises mr. Jenkins of this circumstance with his child that's what mr. reef alleges that on on the 26 of the month the only evidence that we have back to judge merguez question the only evidence that we have in terms of shamrocks decision to terminate is the declaration of mr. Jenkins that this that he'd made this decision in his mind right it's not documented doesn't send an email doesn't make a note to the memo to the personnel file anything like that from from mr. Jenkins himself there is no specific document what we do have is the email he received with the sales targets whether mr. reef was making them then we have him in consultation with management meant making the decision to terminate on the 25th as indicated in a sworn declaration then we have a declaration for Monica Hergert indicating that the next day on the 26 she completed the termination report we provide that termination report that's an exhibit to her declaration then we have testimony that a meeting was scheduled with mr. reef and that he came in the office on the first okay for the termination meeting and so what what's here is you know especially given California law and the obligation to provide the final paycheck on termination and that they wanted to meet with him in person they had to put the wheels in motion several days before the actual termination both in terms of making the decision completing the complete the the termination report requesting the final paycheck calling him into the office and then having the meeting and the opposing counsel could deposed all of management that was involved in the termination discussions they could have provided testimony attempted to try to undermine that decision they haven't provided any testimony from Chris Jenkins Monica Hergert or anyone else in management that would somehow impact this issue and create a genuine issue of material fact I did want to address a couple issues around the section 1102.5 C claim the case that was cited by mr. Reeves counsel the wine guard actually states for states a different proposition it's consistent with all other authority on this point that you actually under subsection C you need to establish a legal violation you can't state that there was a good faith belief that you were violating the law and therefore state a claim for protected activity and here there was note testimony by mr. Reef that he refused asked for the the cleaning products that he refused to even transport them let alone that in doing so that would be a legal violation and just to clarify a minor point that he claims that it was a form an employee at his former employer business that told him that a hazmat certification was to transport a certain products it wasn't at shamrock yeah that's what that's what I thought as well from the record and in terms of so there's a question about whether I mean there or the the undisputed facts show that there was no protected activity on the on the two parts of the 1102.5 claim and even if he could meet that threshold assuming arguendo there is no causal link or or a pretext there's he has not provided anything outside of proximity in time to support that claim so you're saying in order to establish protected activity in this case he would have had to have refused to transport these chemicals under the line guard case correct and all there's other mostly decisions from the district court level but all the cases that have supported the the notion that there needs to be a refusal and those words are clearly delineated in the in the statutory provision so it's really two parts you have to communicate a refusal and you have to that refusal has to concern essentially a request that you participate in activity that would be unlawful and and so the Chen decision for example makes clear that mere sequence is not enough to establish causation there's a line of other cases that we've cited in our answering brief that reach the same conclusion and here you know we simply don't have any evidence that would support any such a causal connection and then as for the section 2802 claim the Gattuso case by the California Supreme Court is very clear that an employer may have a travel allowance that's provided to compensate for automobile related expense expenses for work purposes and we have provided a testimony that this allowance was determined based on the expected out-of-pocket costs by the account executives and mr. reef did receive just written discovery asking for information documents to support his actual out-of-pocket expenses to determine whether in fact he could be owed more than was paid by the travel allowance he clearly responded that he had no information or documents did he have insurance I believe he did that's my understanding from his testimony was he required to have insurance as part of his employment and use of his own vehicle by shamrock required by shamrock he was and and there there is no there's no authority that would prevent an employer from requiring that as a condition for driving a vehicle for work-related purposes and it's you know we were looking at he provided or he referenced a repair estimate he received but the the district judge ruled that that statement was inadmissible because based on best evidence rule so it wasn't before the district court even if it were admissible he's talking about I believe a couple thousand dollars mr. reef was receiving twelve hundred and fifty dollars a month so by any reasonable measure he would have been compensated for that type of loss assuming that's all of his loss and then you know lastly as to the the floating holiday question he mr. reef just hasn't referenced any document or anything that would show in fact he was deducted for that floating holiday contrary to what was represented to him by by fax Turner in that email and in his conversation and so we based on that based on the fact that the floating holiday was not deducted there's no evidence to support that then all of the section 224 201 and 226 claims that are attendant to that allegation would be appropriate for for Mr. Reese appeals based on his own conjecture and speculation and he has offered no admissible evidence to central to his claims raising a tribal issue accordingly we requested the panel from summary judgment in this case thank you thank you now good morning for the last time today thank you first I would like to point out the issues that were just being discussed with respect to the deduction of the vacation hours from mr. Reeves paycheck there is mr. Reeves declaration from paragraphs 10 through 12 which begins on 0 3 2 er and goes to 0 3 3 spell out that he had he looked at his pay stubs prior to January 1st in December of 2012 and saw that he had a certain amount of hours and then they were deducted after the first he did send the email counsel addressed asking that those be recredited back because he worked on the first and those were not recredited and those yes there's the documents have to be explained it's difficult to see from the pay stub itself whether or not he got hours because we don't have the extrinsic evidence of how many he should have gotten but with his declaration it's explaining how many hours plaintiff maintained he should have gotten versus what you can see in the record of that pay stub of what he actually did acquire excuse me with respect I can hear about eight or nine hours I believe we are your honor that he contends he was not paid yes your honor yes okay second I would like to briefly correct my statements previously that it was his supervisor at the current employer the court and opposing counsel are correct that mr. mr. Reeves declaration say that his belief of the unlawful activity was based on something he had gleaned from a prior employer so I apologize for that misstatement and wanted to correct it finally I would like to address the issue of the timing of when this happened not only with respect to mr. Reeves informing his his young daughter not young sorry his daughters multiple sclerosis diagnosis and his need to help her but in addition it was before the end of this performance improvement plan the his supervisors pulled the sales report as is grant is said by both sides they pulled it through the 24th of February however he was supposed to be judged through the 1st of March in many sales positions there are a lot there's a lot that happens at the end of the month that people rush to get things done and it's our position that that's an additional piece of evidence in support of the pretextual nature nature of this termination that regardless of what mr. reef did to satisfy this pip and had he been able he had he had the time maybe he could have satisfied the tip or the apologize but you know this was determined at an early phase before before all of the evidence was in whether he met the goals or didn't meet the goals so what do you think he was terminated what's the pretext here is it the complaining about transporting detergents or is it making a claim under the Family Medical Leave Act and the California counterpart or both your honor we would maintain that it is both that within a shortly before he was put on the pip mr. reef made the complaints about the various issues that have been talked about today and then the day that his termination paper was drawn up which was still a couple of days before his actual termination and the end of his performance improvement plan that morning he informed his company of his daughter's diagnosis and his need to take FMLA and CFRA leave to care for her was he performing in a court I mean I realize your argument that he still had a few days left on the first month of his performance improvement plan but up to the point of his termination had he met the goals of the performance your honor I believe that it's a difficult answer to say we would maintain that he was on track to meet those goals the goals of the performance improvement plan laid out something that he needed to do within the time period and so without giving him the full time period but judging him by the full goals is it's pretextual and your evidence that he was on track to meet that sure I believe it would be in the sealed portion of the record that I believe mr. reef and I apologize I don't have the site for you here had a spreadsheet indicating which where his sales were in which ones he in expected to close timely and they were as well as the contacts that he was meeting with and all that type of stuff that was required under the pip I believe that's in the sealed excerpt which is much shorter and I apologize I can't get it to open right the second to get to the site but I that's where I believe the evidence is I had a chance and I'm looking at what you pointed me to regarding the final paste but it's not really clear what mr. reef accrued before the payout and I'm not sure there's anything here to support you know the evidence that his your best evidence that you can cite you for that your honor that is that is the best document itself but I believe that it needs to be read in connection with mr. reefs declaration explaining it's the fire the hours are okay does anybody else have any other questions thank you very much I thank you no no no and mr. summer and then miss Marcial appreciate your presence and your arguments here today the the case of Paul reef versus shamrock foods is now
judges: Gould, Murguia, Christensen